Our final case for today is United States v. Robert Tate. Mr. Connors. Good afternoon, Your Honors. Thank you for hearing this case. On behalf of the appellant, Robert Tate, the issue, one of the issues that's been raised here is the applicability of the career offender status of this particular appellant based on his 2008 conviction for attempting to engage in the procurement of anhydrous ammonia with the intent to manufacture. The question is whether the district court erred by taking the probation officer's recommendation that applied the controlled substance offense provisions and found this to be a violative of that and one of the qualifying predicate offenses which elevated Mr. Tate's base offense level from 28 to 32. Is your big issue that this was an attempt offense or that anhydrous ammonia as a precursor to methamphetamine is somehow not properly captured? I think it's both, actually, Your Honor. My thinking has kind of evolved on this topic. It's based on the fact that, first of all, anhydrous ammonia is not a listed chemical, which was somewhat of a surprise to me at first. Surprise to me? I mean, you know, unfortunately we've all learned a little bit about the manufacture of methamphetamine and it's used, right? Correct, and clearly it's not a list one or two controlled substance, and the guidelines specifically, more importantly, the 1997 Sentencing Commission revisions of the guidelines which enumerated what was controlled substance offense or not, cited the fact that it needed to be possession of a listed chemical. Is meth listed? Methamphetamine is a controlled substance but not a listed chemical, I believe, Your Honor. Sudafedrin, however, has been deemed, not in my brief, but I note that under this Court's holding in U.S. v. Dyer in 2006, D-Y-E-R found that sudafedrin, nevertheless, is a listed chemical for purposes of possession of sudafedrin with the intent to manufacture. Right, but if methamphetamine is a controlled substance, the state statute requires possession of anhydrous ammonia with intent that it be used to manufacture meth, and he was convicted under that statute, so that makes it a controlled substance offense. It would seem so, Your Honor. I think that goes to Judge Sykes. First question is this, am I surrounded? This is Judge Sykes, I'm Judge Wood. I'm sorry, Your Honor. Yes, I mean, right, it was just not clear to me from your brief whether your primary problem was that it was an attempt offense or whether it was the link to methamphetamine, but as Judge Sykes says, the state offense of conviction already required the link to the methamphetamine production. Indeed it does. And I'm not aware of anything that excludes attempt offenses, but maybe you can tell me. Well, Your Honor, I think first of all that clearly the government's position was that because this was a Class I felony and that the Illinois legislature said that if you add the tagline, intent to manufacture with respect to anhydrous, this is a serious drug offense and this should qualify. But I would suggest that that's maybe a pathway to the first part of the analysis, but you can't get away from the guidelines, the specific provisions of the guidelines, which are laid out under 4B1.2, which quite clearly describe manufacturing. And so I suppose to that extent, Your Honor, I agree with you that since this was not manufacturing per se, attempting to engage in the procurement of something is inchoate, as I've suggested in my brief. Well, 4B1.2 also includes the possession with intent to manufacture. It doesn't just cover manufacture. Well, it covers, and I guess you almost have to look at the charges that were dismissed. He was not convicted of either the specific offenses of possession of prohibited flask. That's the 21 U.S.C. 843 provisions, which were part of the 97 sentencing guideline amendments, which were attempting to correct any circuit conflicts on this point because there obviously was some confusion on it. Counsel, because you've got a terrific textual argument, frankly, I think, given the very specific provisions for the three-necked flask and equipment and listed chemicals, and what we've got here is not a listed chemical, and he's not convicted of engaging in manufacture. But I guess why would the Sentencing Commission have drawn the line where it did, where you argue it did? Right. Well, I think to some extent because it's chemistry, and I think that Congress has to ask the question, should we criminalize, what should we criminalize with respect to the periodic table? But really, isn't it the case Congress is criminalizing, you know, there you are, you're like Julia Childs. You've got your anhydrous ammonia, you've got your pseudoephedrine, you've got your batteries, you've got, you know, whatever else you need, and you're getting all set to whatever they call this, this shake-and-bake method of manufacturing your methamphetamine. It's not a big stretch for me to think that the Sentencing Commission thought that that wasn't, you haven't yet manufactured it, but you've put yourself very close to being in the position to do it, and they thought that counted. Well, obviously the Illinois legislature felt that for purposes of making this a Class I felony, it did qualify. I guess the real question is in the context and fabric of the career offender guidelines, there is some notice and applicability issues that are relative to just fairness and due process. And in terms of this particular offense, I think you really do have to look at whether possession is significant or not. Is there constructive possession by the attempt to engage in the procurement by that language alone? Well, attempts are expressly swept in under 4B1.2. And so then the question, I've thought about some of the possibilities. What if you pick up the phone and you call? We don't do a factual inquiry. It's just a legal inquiry about the elements. If this is an attempt offense, it's in, as long as it's a controlled substance offense, and the completed offense, that is. And the completed offense under Illinois law is clearly, or at least as the elements of Illinois law describe the offense, it meets the definition in 4B1.2 because it's possession of anhydrous ammonia with intent to manufacture meth. Well, then there's this question, Your Honor, is it a possession? Now, I understand the court's reasoning that attempting to engage in something, but how is it different from tampering, which is not a qualifier? I think what you're saying is that they're just, in your view, they're just too many steps out, that it isn't attempting to manufacture. It's attempting to possess something which itself would eventually be used in the manufacture. And so that's a textual issue. I gather that if we agree with you in remand, the district judge would be perfectly free to say, in essence, okay, even if the career offender guideline doesn't strictly apply, close enough. I'm taking advice. These are advisory. And given Mr. Tate's criminal history and the well-known uses of anhydrous ammonia, et cetera, I'm going to treat this as if he had been convicted of a controlled substance offense. He could do that, right? In fact, as you may have seen in my brief and in the transcript, the district judge recognized that this was a gray area. But he did not say that this would be harmless. He didn't say he would do this regardless of the legal outcome. He did not. He clearly cited on the side of the fact that this was a predicate offense, designating my client as a career offender statute. On the relevant conduct question, I've got to say that looks like a pretty pure credibility finding to me. It's a credibility finding, Your Honor, absolutely. Do you want to give us your best shot or leave that to the briefs? The fact of the matter is you have an enormous swing of relevant conduct, and it's all part of this conspiracy, but it's not clear exactly conspiracy with whom. Just because he's in a romantic relationship with one Brandy Pierce, you have 0.2 grams of meth on the table in trial and 400 in the closet. So it's all notional, suggested based on the- Not literally in the closet. Not literally in the closet. Yes. You don't want to use that term. That's correct. But in the sentencing closet. In the sentencing sense, it was, Your Honor. And so, as I suggested in my brief, it's disturbing the fact that although there was involvement, the alleged unindicted co-conspirators were involved. Ms. Huston's involvement was that she provided a place for Mr. Tate and many others, evidently, including herself, to make methamphetamine. Was this the conspiracy that the government proved? What was used, what this testimony relied upon, was to prove the relevant conduct. Somewhat differently, but the same as Brandy Pierce, who, if you'll see the colloquy between not only on direct and cross-examination, indicated that really she believed she had nothing to do with it. She didn't really admit that she was in- She was buying the pills and crushing the pills, though. Yes. She did have some involvement. The question is, is all of the defendant's meth-making part of the conspiracy, simply because she said she simply represents that. I know he made meth every day, but is that representative of the conspiracy with anybody else, including her? Okay. Thank you, Your Honor. Thank you very much. Mr. Norwood. And may it please the Court, I believe Judge Sykes correctly says, I believe attempts are included in the controlled substance offense. Where do you get that? Application Note 1. Thank you. I was going to say, I couldn't swear, but I thought it was in the application notes that it does include attempts. Crime of violence and controlled substance offense includes the offenses of aiding and abetting, conspiring and attempting. I thought so. Includes the inchoate offenses. I apologize. I didn't read his brief as addressing that. Your Honor, if you'd like, you raised the textual argument. You think there's a problem there because it's illogical. It seems to include, for example, a beaker, a glass beaker, saying this flask, if you intend to use it to make methamphetamine, it is a controlled substance offense under the commentary, but if you possess anhydrous ammonia, a necessary chemical, it isn't. I understand. I guess I would address the Court to, there is a federal statute involving stealing anhydrous ammonia for the purpose of manufacturing methamphetamine in the controlled offense section, and if you attempt to steal anhydrous ammonia to do the same thing, it would be a controlled substance offense under federal law, so I'm, I would think the same thing. This is the first I've heard that theory. Well, it's, I raised it in my brief about the, there is a federal statute involving anhydrous ammonia. Maybe I missed it. At 21, well, it's on page 18 of my brief. It's at 21 United States Code section 864. There's a federal statute under, that's under title 21, that it's unlawful for any person to steal anhydrous ammonia or transport it across state lines knowing, intending, or having a reasonable cause to believe that it would be used to make a controlled substance. And I suggest the state statute is just like the federal statute, but the mens rea is even more specific. In the state statute, you have to definitely intend to make methamphetamine. With the federal statute, it's knowing or intending or having a reasonable cause to believe. Okay. So help me with the text. With working with the application note. Do we have unlawful possession of a listed chemical with intent to manufacture a controlled substance? No, Your Honor, it's not a listed chemical. Okay. Do we have unlawful possession of a prohibited flask or equipment with intent to manufacture? It is not a flask or equipment, Your Honor. So given those very specific provisions, how do we stretch to reach an unlisted chemical? Well, I think you go back to the text of the actual controlled substance offense, which involves a statute that prohibits the manufacture of a controlled substance. But it didn't manufacture. And that's what the state statute does. Pardon? But it didn't manufacture. And we've got the notes that extended to certain kinds of preparations, but not others. I understand, Your Honor. The only thing I could direct the court to is there's an Eighth Circuit case in Walterman where the dissent addresses Your Honor's points. just overlooked it or did a shorthand way of including everything in 843A6. So they were just sloppy? Is that the theory in the application? I'm not going to say the sentencing commission was sloppy. I think that was the opinion of the dissent from the Eighth Circuit, Your Honor. I'm not going to stand up here as a representative of the government and say that, no. But DOJ does sit on the sentencing commission. Your Honor, well, Your Honor. But not Mr. Norwood, I take it. Thank you, Your Honor. You missed that meeting. I will, again, say it's the Eighth Circuit that's saying that. But your argument has to be that his effort to obtain anhydrous ammonia counted as an offense under state law, which was a controlled substance offense. He didn't actually obtain it. He was attempting to. But somehow, because of application note one, that is still enough to get it into the guideline. Correct, Your Honor. Correct, Your Honor. It's that simple. It's a legal issue. Your Honors are far more equipped than I to analyze the statute. But the government believes it squarely fits into the guideline definition of a controlled substance offense. Did this make a difference? It looked to me like this must have made a difference only to his offense level, not to his criminal history. But is that correct? It looked like he had a lot of things for criminal history. I don't know, Your Honor. As I stand here, I don't recall if he was a criminal history Category 6, irrespective of the career offender status. He had a number of convictions. A number of those, though, I believe were only one-point convictions because he received probation. So he may not have been a career offender. It may have popped him up to a 6 as well. Yes, Your Honor. So I can't say that definitively. If Your Honors have any other questions? Apparently not. So thank you very much. Thank you, Your Honors. If you'd like the last word, Mr. Connors, I will give it to you. Your Honor, only because this concerns the Walterman. I'm glad Mr. Norwood mentioned the Walterman case. The Walterman case involved lithium, possession of lithium with intent to manufacture. And there, the Eighth Circuit in 2003 said that Congress had a purposeful intent in delineating listed versus unlisted chemicals. And it said that the provisions of the sentencing guidelines are intended to be harmonious and complementary of each other, not some type of. Thank you very much. All right. Thank you very much. And you took this by appointment, did you not? We appreciate your efforts on behalf of your client. Thanks as well to the government. The court will take the case under advisement and will be in recess.